IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TRACY HUNTER,<br><br>　　　　　　　　　Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Commissioner of the Social Security Administration,<br><br>　　　　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:12CV90 |

　　　　This matter is before the court on Plaintiff Tracy Hunter's appeal, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant"), denying his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Oral argument was held on January 16, 2013. At the hearing, Plaintiff was represented by John J. Borsos, and Defendant was represented by M. Thayne Warner. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the appeal under advisement, the court has further considered the law and facts relating to the appeal, and the court has again reviewed the administrative record. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

　　　　Mr. Hunter filed an SSI application and a DIB application on July 28, 2009. (Tr. 18). The applications were denied initially and also upon reconsideration. Following the reconsideration

denial, Mr. Hunter requested a hearing.  A hearing was held in Salt Lake City, Utah, on March 2, 2011. (Tr. 36).  Mr. Hunter testified at the hearing, as did a vocational expert ("VE") (Tr. 41).  A medical expert, Thomas Atkin, Ph.D., also testified at the hearing. (Tr. 41).  The Administrative Law Judge ("ALJ") issued a decision on March 21, 2011, finding Mr. Hunter not disabled.  (Tr. 35).   A timely request for review by the Appeals Council was filed on April 18, 2011. (Tr. 12).  The final administrative decision of the Commissioner of Social Security denying benefits was issued on December 9, 2011.  (Tr. 1).

## II.  STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct  legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).   The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005)(quotations and citation omitted).

## III.  FIVE-STEP DISABILITY DETERMINATION

A five-step evaluation process has been established for determining whether a claimant is

disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R.§§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

Next, "[s]tep three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At . the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If the claimant is able to perform his previous work, he is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id*. At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

"whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work in the national economy in view of his age, education, and work experience." *Id*.; *see* 20 C.F.R.§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

In the present case, the ALJ held at step one that Mr. Hunter had not engaged in substantial gainful activity since July 28, 2009.  (Tr. 120).  At step two, the ALJ found that Mr. Hunter had severe impairments of migraine headaches and mood disorder. (Tr. 21).  At step three, the ALJ found that none of Mr. Hunter's impairments met or equaled a Listing. (Tr. 21-22).  At step four, the ALJ found that Mr. Hunter was able to return to his past relevant work. (Tr. 33-34).  At step five, the ALJ made an alternative finding that there were other jobs that exist in significant numbers in the national economy that Mr. Hunter could perform.  (Tr. 34). Plaintiff claims that these findings were based on legal error and are not supported by substantial evidence.

### IV.  DISCUSSION

In support of his claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred by (1) improperly rejecting the opinions of the claimant's treating and examining medical providers; (2) rejecting the claimant's own subjective complaints and lay witness testimony; (3) failing to conduct a proper step four analysis; and (4) failing to meet the step five burden to identify specific jobs, available in significant numbers, consistent with the claimant's specific functional limitations.   The court will address each of these arguments in turn.

A.   **Did the ALJ Err By Improperly Rejecting the Opinions of the Claimant's Treating and Examining Medical Providers?**

The opinion of a treating physician is entitled to great weight and the Commissioner must provide "specific, legitimate reasons" for rejecting a physician's opinion. *See Miler v. Chater*, 99 F.3d 972 (10th Cir. 1996); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). In evaluating the medical opinion evidence, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The first step is to determine if the physician's opinion is to be given "controlling weight." *Id*. This step requires the ALJ to make a clear finding as to whether he or she gives a physician's opinion controlling weight or not. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the ALJ determines that a physician's opinion does not merit controlling weight, the second step requires the ALJ to state how much weight he or she gives the opinion, using the factors provided in the regulations. *Krauser*, 638 F.3d at 1330–31.

In the instant case, the ALJ stated that she gave "little weight" to the opinion of Plaintiff's treating physician because "it is inconsistent with the evidence" and because Plaintiff had seen Dr. Elder only three times. (Tr. 22, 31-32) As an example of the inconsistencies between Dr. Elder's opinions and other evidence, the ALJ identified several material differences between the Medical Statement Dr. Elder completed for Plaintiff on December 20, 2010 and the Medical Statement he had completed approximately seven months prior–in May 2010. (Tr. 31-32). The inconsistencies undermined the credibility of the opinions. The ALJ also noted that Dr. Elder's opinions in the Medical Statements were inconsistent with his own progress notes, with the notes from Dr. Montgomery, whom Plaintiff saw for medication management, and with the opinions of the State agency medical consultant and Dr. Atkin, the medical expert at the hearing. (Tr. 32-33).

While the ALJ did not address each of the factors set forth in 20 C.F.R. § 404.1527(d)(2) for evaluating a treating physician's opinion, the ALJ is not required to discuss each factor, as long as "the ALJ's decision [is] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.2007) (internal quotation marks omitted).  Here, the court finds no reversible error in the ALJ's treatment of Dr. Elder's opinion.

**B.    Did the ALJ Err By Rejecting the Claimant's Own Subjective Complaints and Lay Witness Testimony?**

Plaintiff argues that the ALJ improperly rejected his own subjective complaints.  (Pl. Br. at 17).  The ALJ did not, however, reject Plaintiff's complaints entirely, but rather, noted that there were inconsistencies that impacted, to some extent, Plaintiff's credibility.  Specifically, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible *to the extent they are inconsistent with the above residual functional capacity assessment*."  (Tr. 25) (emphasis added).

When evaluating credibility, the ALJ must follow the prescribed two-step process: (1) evaluate whether the claimant has an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and then (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.  *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (discussing factors to evaluate credibility). "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

While the ALJ must cite specific evidence used in evaluating a claimant's subjective

complaints and explain the reasons why he concludes those complaints are not credible, *see id.*, this process "does not require a formalistic factor-by-factor recitation of the evidence," *Qualls*, 206 F.3d at 1372. "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, [the procedural requisites] are satisfied." *Id*.

In this case, the ALJ applied the two-step process. (Tr. 25-30). First, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 25). In the second step, as noted above, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 25). The ALJ then identified several specific examples to support her finding. (Tr. 25-29). She also listed other contradictions in the record regarding Plaintiff's reported symptoms of his episodes (Tr. 30), his reported duration of the episodes (*id.*), and the frequency of the episodes. (*Id*.)  While the court may not agree that each cited example supports the ALJ's finding of inconsistencies, but reviewing the record as a whole, the court finds that the ALJ's credibility determination is supported by substantial evidence.

In addition, Plaintiff argues that the ALJ failed to "mention and credit the written statements of Mitch Vetere, Deputy Downard, and Mayor Pat Brady" and that the ALJ provided "no reason for rejecting these lay witness statements." (Pl. Br. at 19). The ALJ, however, specifically mentioned all three of these witnesses in the context of her credibility analysis, and thus it is clear that she considered their testimony.

Accordingly, the court agrees with the Commissioner that the ALJ's decision was free of legal error and supported by substantial evidence.

C.     **Did the ALJ Err at Step Four or Step Five?**

Plaintiff contends that the ALJ failed to conduct a proper step-four analysis. While the court agrees that certain required findings were not made at phases two and three of the step-four analysis, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir.2008), these deficiencies are immaterial because the ALJ made an alternative finding at step five.

At step five of the sequential evaluation, the burden shifts to the Secretary to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite the identified limitations. *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). One way the ALJ can meet that burden is by taking the testimony of a vocational expert. In the present case the ALJ's step five denial was based on portions of the vocational expert's testimony. (Tr. 29). Plaintiff argues, however, that the vocational testimony on which the ALJ relied came in response to an incomplete hypothetical, which did not include all of Mr. Hunter's limitations. (Tr. 87-90).

Plaintiff's argument, though, appears to be an attack on the ALJ's residual functional capacity assessment because the hypothetical question presented to the vocational expert included all of the limitations that the ALJ included in her residual functional capacity assessment. (Compare Tr. 22-23 with Tr. 76). The vocational expert considered all the limitations the ALJ ultimately found, and the vocational expert testified that a significant number of jobs existed in the national economy for a hypothetical individual who was as limited as Plaintiff. Because the ALJ included the same limitations in the residual functional capacity determination in her hypothetical to the vocation expert, the vocational expert's response constitutes substantial evidence.

## V.  CONCLUSION

For the foregoing reasons, the court finds that the Commissioner's decision is supported by substantial evidence and is free from legal error.  Accordingly, the Commissioner's decision is hereby AFFIRMED.  The Clerk of Court is directed to enter Judgment in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 28th day of March, 2013.

DALE A. KIMBALL
United States District Judge